# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

FRANCISCOT AUGUSTE;
DUKUDUKU SAKHILE SACOLO;
MAHDI DIZANI;
HODA MOMBEINI;
GEORGE HALAL;
MAMOUN JABER;
MAJEDA IBRAHIM HASAN;
AHMAD KHALED KASEM;
MOHAMAD KHALED KASEM;
MOZHGAN ASKARZADEHFARAHANI;
POURYA YARAHMADI;
AUNG THUTA NYAN;
FAYAZULLAH KOSHANSAIDY;
SHAYESTA SAIDY;
AMIR HOSEIN TAHERKHANI;
PEGAH KARIMI;
NAVID DARVISHZADEH;
NAVID SEIDI;
SHAHLA SHIRINZAD;
RODNEY RAMOS GONZALEZ;
THIDA SOE;
FADULELMOLA MOHAMED;
AHMED FADUL;
AMIR MEHDI SHAYAN;
SHAHIN SHARIFI;
JESUS MANUEL GARCIA VALLADARES, and DIANA DELFINO LLERENA, on behalf of themselves and their minor child M.G.D.;
NASSER SELO;
RASHA ALKOUDMANI;
MATIN KHAJAVI;
SU YAMIN LATT;

Case No. 8:26-cv-00629-JWH-JDE

**ORDER REGARDING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION [ECF No. 14]**

HOOMAN DADRAS;
JETHRO EKOZIN;
ZEID ABDELRAHMAN;
HAMIDREZA REZAEI;
AMR ELAMIN ELHUSSEIN MOHAMMED;
TIBYAN ABDELAZEEM IBRAHIM MOHAMED;
MAHMOUD SHAAR;
HASAN NIKKHAH;
MOJTABA ASKARZADEH FARAHANI;
TARA ESLAMINOKANDEH;
OMER ELZIEN MOHMEDALI OMER;
RAMIN ESMZAD, and BAHARE MOHSENI ZENUZI, on behalf of themselves and their minor child B.E.;
HAMED NIKFARJAM;
HEDIEH ASHRAFI;
SARASADAT MESCHI;
EMMANUEL IYOYO;
BLESSING UGBERAESE;
VALENTINE NRIAGU;
ROZITA DOOSTI, and ARDAVAN BEHZAD, on behalf of themselves and their minor child S.B.;
AMIR HOSSEIN KAZEMIPOUR ASHKEZARI;
YAILIN HERRERO HERNANDEZ;
DENNIS CABRERA GARCIA;
SOGOL SEDIGHI;
MEHDI TORBAT ESFAHANI;
NAZANIN BASIRI;
MAHSA BASTANKHAH;
MOHAMMAD REZA NOURI;
ADETAYO TIMOTHY OLUSEGUN;
SAMIN HANIFI;
PEDRAM SHIRMOHAMMADI;
ALI DERAKHSHAN;
EMMANUEL OLUSHOLA OTABOR;
ABIODUN IDOWU;
OLAYINKA ADEBOLU;
SEYYEDKAZEM HASHEMIZADEHKOLOWRI, and ROGHAYEH AKBAR NEZHAD, on behalf of themselves and their minor child S.M.H.K.;
EMMANUEL IDDIO;
ABOUZAR MOVAHEDI QOMEI;
SAHAR ASSADI;
KAYODE INADAGBO;

OLUWATOSIN OLAROYEKE INADAGBO, on behalf of themselves and their minor child S.J.K.;
MOHAMMAD YAHYA;
SADRA MOHAGHEGH;
NEDASADAT TAHERI;
HOUMAN KOSARIRAD;
SEYED AMIRHOSSEIN MOGHADDAS;
JAVIER MARTINEZ PACHECO, on behalf of himself and his minor child S.M.M.;
MELICIA SYLLA;
ZIBA FAZEL;
RICARDO OLYMPIO;
FERNANDO RODRIGUEZ RUIZ, and JENNY FAGUNDO GARCIA, on behalf of themselves and their minor children A.R.F. and E.R.F.;
SHAHIDE SAYADIAN;
SADEGH AHMADI;
VAHID RAFIEI;
STEFAN GROSS HORNUNG, and LUISA ANDREYNA STORMS ALDANA, on behalf of themselves and their minor children S.E.G.S. and A.A.G.S.;
SHOKOUFEH KHANZADEH;
ARMIN DANESH PAZHO;
GHAZAL ALINEZHAD NOGHRE;
MOHAMMAD HESAM SHAELAIE;
PARIVASH MALEKZADEHDEILAMGHANI;
YEGANEH FARSI;
SOGOL SANJARIPOUR;
SHAHAB NIKKHOO;
ALI KOOHI ESFAHANI;
ELAHE KHATIBI;
SAEED REZAEE;
FATEMEH HADI NEZHAD;
AHMAD BELAL GHIASI;
PAIMAN GHIASI;
VEDELYN SEVERE;
GOLNAZ ASAADI TEHRANI, and SINA MIRZAAHMADI, on behalf of themselves and their minor child N.M.;
AMIR KAMYAB MOGHADDAM, and SEPIDEH AMIR AHMADIAN, on behalf of themselves and their minor children R.K.M.I and R.K.M.II;
EHSAN FOROUMANDI;
PARNIAN GHANEEI;
PARISA AFSARI;
GHAZAL ZANDIEH;

FARIMAH FAYYAZ;
REZA ADINEHVAND;
PARISA SHEIKHOLESLAMI;
AMIRSAEID SAFARI;
BEHNAM MOHAMMADIANMOSAMMAM;
MOHAMMAD DEHGHAN BANADAKI;
FATEMEH TAJADDOD;
JAVID AKHAVAN;
SEYED MOJTABA HOSSEINI GHAHFAROKHI, and ELMIRA ARMAND BOROUJENI, on behalf of themselves and their minor children S.A.H.G. and S.S.H.G.;
FARSHAD BABAEIJANDAGHI;
MARAL MALEKIAN;
UGOCHINYEREM AKUNNE;
HTOO AUNG WIN; and
SEYEDEH SARAHI RAHIMI PIRMAHALEH,

Plaintiffs,

v.

JOSEPH B. EDLOW, in his official capacity as Director of U.S. Citizenship and Immigration Services,

Defendant.

Before the Court is the motion of the 110 Plaintiffs remaining in this action for a preliminary injunction to enjoin Defendant Joseph B. Edlow from delaying the adjudication of their immigration applications and to adjudicate their applications within 30 days.[1] The Court conducted a hearing on the Motion in May 2026. After considering the papers filed in support and in opposition,[2] as well as the argument of counsel at the hearing, the Court **DENIES without prejudice** Plaintiffs' Motion, for the reasons set forth below.

## I. BACKGROUND

### A. Legal Landscape

The Immigration and Nationality Act (the "INA") allows certain non-citizens to apply for immigrant visas or lawful permanent residence status through various avenues, including employment-based petitions (Form I-140), family-based petitions (Form I-130), asylum petitions (Form I-589), and certain "special immigrant" petitions (Form I-360). *See* 8 U.S.C. §§ 1151(a)(1) & (2); 8 U.S.C. § 1159(b); 8 C.F.R. § 204.1(a); 8 C.F.R. § 204.5(a); 8 C.F.R. § 1208.3(a)(1). Non-citizens who have one of the above-listed petitions pending or approved can apply for lawful permanent residence using Form I-485, Application to Register for Permanent Residence or Adjust Status. *See* 8 U.S.C. § 1255(a); 8 C.F.R. §§ 245.2(a)(2)(ii)(B) & (a)(3)(ii). The spouse and children of the applicant also may apply for lawful permanent residence as derivative applicants. *See* 8 U.S.C. § 1153(d). Under 8 U.S.C. § 1255(a), United States

---

1 *See* Pls.' Mot. for Prelim. Inj. (the "Motion") [ECF No. 14].

2 The Court considered the documents of record in this action, including the following papers: (1) Compl. (the "Complaint") [ECF No. 1]; (2) Motion; (3) Def.'s Opp'n to the Motion (the "Opposition") [ECF No. 25]; (4) Pls.' Reply in Supp. of the Motion (the "Reply") [ECF No. 26]; and (5) Pls.' Second Notice of Change in Material Facts [ECF No. 38].

Citizenship and Immigration Services ("USCIS")[3] may, in its "discretion and under such regulations as [it] may prescribe," adjust a non-citizen's status to "lawfully admitted for permanent residence" if (1) the non-citizen applied for an adjustment of status; (2) the non-citizen "is eligible to receive an immigrant visa and is admissible to the United States for permanent residence; and (3) an immigrant visa is immediately available to him at the time his application is filed." 8 U.S.C. § 1255(a).

**B. Factual Allegations**

On December 2, 2025, USCIS issued Policy Memorandum PM-602-0192 ("PM-0192"), with the subject line: "Hold and Review of all Pending Asylum Applications and all USCIS Benefit Applications Filed by Aliens from High-Risk Countries."[4] PM-0192 places an "adjudicative hold" on a wide range of pending requests for immigration benefits filed by aliens from a list of 19 countries, including all of the countries of which Plaintiffs are nationals.[5] PM-0192 specified that it would "remain in effect until lifted by the USCIS Director through a subsequent memorandum."[6] On January 1, 2026, USCIS issued a second Policy Memorandum ("PM-0194"), with the subject line "Hold and Review of USCIS Benefit Applications Filed by Aliens from Additional High-Risk Countries."[7] PM-0194 states that the guidance of PM-0192 remains

---

[3] The Homeland Security Act of 2002 transferred the functions described in 8 U.S.C. § 1255(a) from the Attorney General to the Department of Homeland Security. *See* 6 U.S.C. § 271(b). All references to the Attorney General are to be read as referring to the Secretary of the Department of Homeland Security. *See id.* at § 557; *see also Clark v. Martinez*, 543 U.S. 371, 375 n.1 (2005).

[4] Complaint, Ex. A ("PM-0192") [ECF No. 1-1].

[5] *See id.*

[6] *Id.* at 2-3.

[7] Complaint, Ex. B ("PM-0194") [ECF No. 1-2].

in place, and PM-0194 further explains that the "hold" on benefit applications "allows a case to proceed through processing, up to final adjudication."[8] In other words, the hold precludes "the issuance of a final decision on a case, such as an approval, denial, or dismissal."[9]

PM-0192 references an executive order issued by President Trump on January 20, 2025 ("EO 14161"), which is entitled "Protecting the United States from Foreign Terrorist and Other National Security and Public Safety Threats."[10] As characterized by PM-0192, EO 14161 "underscores the importance of vigilance during the visa issuance process to ensure that individuals approved for admission into the United States do not intend to harm Americans or compromise U.S. national interests."[11] PM-0192 also refers to Presidential Proclamation 10949, entitled "Restricting the Entry of Foreign Nationals to Protect the United States from Foreign Terrorists and Other National Security and Public Safety Threats," which was issued by President Trump on June 4, 2025.[12] PM-0192 states that "[e]xercising authority under section 212(f) of the [INA], the proclamation imposes restrictions, limitations, and exceptions on the entry of aliens from 19 high-risk countries."[13] On December 16, 2025, President Trump issued Presidential Proclamation 10998, entitled "Restricting and Limiting the Entry of Foreign Nationals To Protect the Security of the United States" ("PP 10998").[14] PP 10998, together with

---

8 *Id.* at 1 n.2.

9 *Id.*

10 PM-0192 2.

11 *Id.*

12 *Id.* at 1.

13 *Id.*

14 PM-0194 1.

PM-0194, expanded the ban on entry into the United States to individuals from 39 countries, plus the Palestinian Authority.[15]

Both PM-0192 and PM-0194 state: "This policy memorandum is intended solely for the guidance of USCIS personnel in the performance of their official duties, but it does not remove their discretion in making adjudicatory decisions. It may not be relied upon to create any right or benefit, substantive or procedural, enforceable under law or by any individual or other party in removal proceedings, in litigation with the United States, or in any other form or manner."[16]

Plaintiffs—who reside throughout the United States and are all citizens of countries subject to the pause imposed by PM-0192 and PM-0194—have each filed and have a pending Form I-485 application with USCIS.[17] Plaintiffs allege that they have not received final decisions on their applications because they are citizens of the designated "high risk" countries. They assert eight claims for relief seeking declaratory and injunctive relief enjoining the implementation of the Policy Memoranda and requiring Edlow to adjudicate Plaintiffs' applications.[18]

---

[15] *See id.* Those 39 countries are Afghanistan, Angola, Antigua and Barbuda, Benin, Burkina Faso, Burma, Burundi, Chad, Republic of the Congo, Cote d'Ivoire, Cuba, Dominica, Equatorial Guinea, Eritrea, Haiti, Gabon, The Gambia, Iran, Laos, Libya, Malawi, Mali, Mauritania, Niger, Nigeria, Palestinian Authority, Sierra Leone, Senegal, Somalia, South Sudan, Sudan, Syria, Tanzania, Togo, Tonga, Turkmenistan, Venezuela, Yemen, Zambia, and Zimbabwe. *See* Complaint ¶ 125.

[16] PM-0192 4; PM-0194 5.

[17] Complaint ¶ 123.

[18] *See generally id.*

### C. Procedural History

Initially, 142 Plaintiffs filed this action on March 20, 2026.[19] Since then, 32 Plaintiffs have voluntarily dismissed themselves from this case.[20] The remaining 110 Plaintiffs seek a preliminary injunction through the instant Motion, which they filed on April 1, 2026.[21] Specifically, Plaintiffs seek an injunction ordering Edlow in his official capacity as the Director of USCIS to lift the hold on their Form I-485 applications and to complete his adjudication within 30 days.[22]

## II. LEGAL STANDARD

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). Its purpose is to maintain the "status quo ante litem"—that is, "the last uncontested status which preceded the pending controversy"—pending a decision on the merits. *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1210 (9th Cir. 2000) (quoting *Tanner Motor Livery, Ltd. v. Avis, Inc.*, 316 F.2d 804, 809 (9th Cir. 1963)). A party seeking a preliminary injunction must establish four elements: "(1) a likelihood of success on the merits, (2) that the plaintiff will likely suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tip in its favor, and (4) that the public interest favors an injunction." *Wells Fargo & Co. v. ABD Ins. & Fin. Servs., Inc.*, 758 F.3d 1069, 1071 (9th Cir.), *as amended* (Mar. 11, 2014) (citing *Winter*, 555 U.S. at 22). When the nonmoving party is a governmental entity, the last two *Winter* factors "merge." *Nken v. Holder*, 556 U.S. 418, 435 (2009).

---

19 *See id.*

20 Notices of Dismissal [ECF Nos. 11-13, 15-17, 36, & 40].

21 *See generally* Motion.

22 *Id.* at 1:23-2:6.

In the Ninth Circuit, "serious questions going to the merits and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *All. for Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011) (internal quotations omitted).

## III. ANALYSIS

### A. Jurisdiction

Edlow argues that 8 U.S.C. § 1252(a)(2)(B) strips this Court of jurisdiction to review Plaintiffs' APA and mandamus claims. The Court disagrees.

The APA's right to judicial review does not apply when "statutes preclude judicial review." 5 U.S.C. § 701(a)(1). When a court considers whether a statute precludes judicial review, it may rely on "a familiar principle of statutory construction: the presumption favoring judicial review of administrative action." *Kucana v. Holder*, 558 U.S. 233, 251 (2010). That presumption, however, may be overcome by "clear and convincing evidence" of congressional intent to preclude judicial review. *Reno v. Catholic Soc. Servs., Inc.*, 509 U.S. 43, 64 (1993) (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 141 (1967)).

The INA provides in relevant part that "no court shall have jurisdiction to review . . . any other decision or action of [] the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of [] the Secretary of Homeland Security."[23] 8. U.S.C. § 1252(a)(2)(B)(ii). The

[23] Edlow also contends that 8 U.S.C. § 1252(a)(2)(B)(i) strips this Court of jurisdiction, but he does not meaningfully develop that argument. *See* Opposition 16:9-11. In any event, the Court concludes that 8 U.S.C. § 1252(a)(2)(B)(i) does not strip jurisdiction because "Plaintiffs do not seek

statute at issue here—8 U.S.C. § 1255(a)—grants the Secretary of Homeland Security the discretionary authority to adjust the status of aliens to legal permanent residents.

Thus, Edlow asserts that this Court lacks jurisdiction over Plaintiffs' claims concerning the Secretary's decision to pause the final adjudication of benefit applications because the decision to pause adjudication is a "decision or action" over which the Secretary has discretion. In support of that argument, Edlow cites *Zia v. Garland*, 112 F.4th 1194, 1200 (9th Cir. 2024), in which the Ninth Circuit applied the Supreme Court's reasoning in *Patel v. Garland*, 596 U.S. 328 (2022), to conclude that 8 U.S.C. § 1252(a)(2)(B)(ii) strips a federal court of jurisdiction to hear a challenge to a decision of the Secretary—through the Board of Immigration Appeals (the "BIA")—regarding good-faith marriage waivers.

However, neither *Zia* nor *Patel* controls here because both of those cases dealt with discrete affirmative decisions or actions related to the merits of the petitioner's immigration applications, while, here, Plaintiffs complain about the Secretary's decision to suspend completely the adjudication of change-of-status applications for applicants from certain countries. In *Zia*, the challenge addressed the termination of a petitioner's permanent resident status based upon the BIA's decision that the petitioner did not enter into his marriage in good faith. *See Zia*, 112 F.4th at 1198. In *Patel*, the challenge addressed a petitioner's application for adjustment of status because the petitioner misrepresented his citizenship status on a driver license application. *See Patel*,

---

review of any final decision, or any subsidiary or preliminary decisions or factual findings, on their applications for immigration benefits. They instead seek review of [Edlow's] failure to issue a decision on their applications because of the adjudication hold policy set forth in PM-0192." *Varniab v. Edlow*, 2026 WL 485490, at *7 (N.D. Cal. Feb. 20, 2026).

596 U.S. at 333-34. In contrast, Plaintiffs here challenge the Secretary's decision to suspend the decision-making process altogether. Although PM-0192 casts the decision as an exercise of the Secretary's authority, underscoring the importance of vigilance during the visa issuance process, its effect is to halt completely the immigration benefit process for individuals from certain countries.[24] The Secretary, through PM-0192 and PM-0194, is not exercising his discretion to adjust the status of foreign nationals—nor is he making any judgment regarding the granting of relief under 8 U.S.C. § 1255—but, rather, the Secretary has decided to cease the decision-making process altogether. That exercise of discretion is not granted by 8 U.S.C. § 1255. Therefore, 8 U.S.C. § 1252 does not strip the Court of jurisdiction to hear a challenge to the Secretary's purported failure to exercise his discretion, and the Court retains jurisdiction to hear Plaintiffs' claims. *See Varniab*, 2026 WL 485490, at *7 ("[N]umerous courts have concluded that subsection (B)(ii) only precludes judicial review of decisions denying discretionary relief on individual applications and does not preclude judicial review of the Government's decision to categorically act or withhold action." (collecting cases)).

Edlow also cites decisions by the Third, Fourth, Fifth, Eighth, and Eleventh Circuits that purportedly hold "that Section 1252(a)(2)(B)(ii) bars jurisdiction over USCIS's pace of adjudication of I-485 applications."[25] While all five of those circuit courts concluded that jurisdiction was absent, the reasoning in those decisions is inapplicable for the same reason that *Zia* is inapplicable: those cases all concerned delay arising from an affirmative decision by the Secretary regarding how to manage visa supply and demand. *See Kale v. Alfonso-Royals*, 139 F.4th 329, 331-33 (4th Cir. 2025); *Kanapuram v. Dir. United*

---

[24] PM-0192 at 2.

[25] Opposition 14:2-4.

*States Citizenship & Immigr. Servs.*, 131 F.4th 1302, 1304-06 (11th Cir. 2025); *Geda v. Dir. United States Citizenship & Immigr. Servs.*, 126 F.4th 835, 838-41 (3d Cir. 2025); *Cheejati v. Blinken*, 106 F.4th 388, 391-93 (5th Cir. 2024); *Thigulla v. Jaddou*, 94 F.4th 770, 772-73 (8th Cir. 2024).

In all five of those out-of-circuit cases, the issue was whether the delay resulting from USCIS's retrogression policy—which set a cutoff date for visa applications necessitated by a statutory limit to the number of available visas—violated the APA. *See Kale*, 139 F.4th at 331-33; *Kanapuram*, 131 F.4th at 1304-06; *Geda*, 126 F.4th at 838-41; *Cheejati*, 106 F.4th at 391-93; *Thigulla*, 94 F.4th at 772-73. Thus, all five courts either expressly noted or assumed that 8 U.S.C. § 1252(a)(2)(B)(ii) stripped jurisdiction because the delay was the result of a decision or action related to how the petitioners' applications would be resolved. *See Kale*, 139 F.4th at 334-36 (reasoning that "agency *inaction* is not to be conflated with *action*" and that "'high-level' and 'hidden policy choices' leading to an agency's failure to act d[o] not constitute a 'decision or action'" (citations omitted) (emphasis in original)); *Kanapuram*, 131 F.4th at 1307 (characterizing "delaying the grant of Form I-485 applications" as "the challenged USCIS action"); *Geda*, 126 F.4th at 842-43 (characterizing the "Adjudication Hold Policy" as a "decision—whether and how to adjust [petitioners'] status"); *Cheejati*, 106 F.4th at 394-95 (reasoning that "retrogression hold policies are effectuated through discrete acts"); *Thigulla*, 94 F.4th at 775 (describing "the decision to delay adjudicat[ion]" as "based on the creation of the Adjudication Hold Policy"). Here, there is no such policy or reasoned decision affecting the priority of Plaintiffs' Form I-485 applications. Instead, Plaintiffs challenge a policy that pauses the Secretary's exercise of discretion regarding how to adjudicate Plaintiffs' applications. Accordingly, because the only action at issue is not an exercise of the Secretary's discretion

under 8 U.S.C. § 1255, the Court does not find the out-of-circuit authority persuasive in this factual scenario.

**B. Venue and Rule 20 Joinder**

Before confronting the *Winter* factors, the Court addresses Edlow's argument that the Court should sever and dismiss all Plaintiffs except for Mahdi Dizani for misjoinder and improper venue.[26] Under the Federal Rules of Civil Procedure, "[p]ersons may join in one action as plaintiffs if: (A) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all plaintiffs will arise in the action." Fed. R. Civ. P. 20(a)(1). "If the test for permissive joinder is not satisfied, a court, in its discretion, may sever the misjoined parties, so long as no substantial right will be prejudiced by the severance." *Coughlin v. Rogers*, 130 F.3d 1348, 1350 (9th Cir. 1997) (citing Fed. R. Civ. P. 21). Furthermore, a district court enjoys broad discretion in deciding whether to grant severance. *See Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1297 (9th Cir. 2000).

Here, despite the fact that Plaintiffs' claims implicate a single set of policies, the Court concludes that severance is appropriate. First, although Plaintiffs challenge the same Policy Memoranda, the specific transaction from which each Plaintiff's right to relief allegedly arises is unique. In other words, because each Plaintiff's right to relief is premised on that individual Plaintiff's background, Form I-485 application, and facts regarding likelihood of irreparable harm, the Court concludes that each Plaintiff's right to relief does not arise from the same transaction or occurrence. Furthermore, at the hearing Plaintiffs' counsel indicated that he was "not sure that Plaintiffs would oppose" severance, given that the Government has not been opposing similar actions

[26] *Id.* at 24:9-26:24.

when filed by individual plaintiffs.[27] Finally, Plaintiffs' counsel represented to the Court at the hearing that his firm has recently filed a class action lawsuit in the Northern District of California asserting very similar claims. *See Red Eagle Law, L.C. v. Edlow*, Case No. 3:26-cv-04850 (N.D. Cal.). Plaintiffs' counsel conceded that Plaintiffs here would be putative class members in that class action. Without suggesting that a class should or should not be certified in that case, the Court concludes that a class action mechanism is a more appropriate vehicle through which numerous plaintiffs may bring the same claim or set of claims.

Accordingly, in view of those considerations and the Court's broad discretion to grant severance, the Court **SEVERS** and **DISMISSES without prejudice** all Plaintiffs other than the first named Plaintiff who resides in this District, Mahdi Dizani.[28] *See Coughlin*, 130 F.3d at 1350. The Court clarifies that the dismissal of Plaintiffs other than Dizani is "without prejudice to the institution of new, separate lawsuits by the dropped plaintiffs against some or all of the present defendants based on the claim or claims attempted to be set forth in the present complaint." *Id.* (citation omitted).

**C. Likelihood of Success on the Merits**

Dizani asserts eight claims for relief; however, to prevail on his request for a preliminary injunction, Dizani needs to establish that he is likely to succeed on the merits of only one of his claims. *See Citibank, N.A. v. Mitchell*, 2024 WL 4906076, at *3 (N.D. Cal. Nov 26, 2024) (noting that a "likelihood of success on even just one claim is sufficient [for injunctive relief] as long as that claim would support the injunctive relief sought"). The Court concludes that Dizani is likely

---

[27] At the hearing, Plaintiffs' counsel cited Exhibits A & B to the Reply.

[28] "Dizani is a citizen of Iran and an applicant for a Form I-485, filed on October 24, 2025, based on an approved I-140." Complaint ¶ 19.

to succeed on his APA claim under 5 U.S.C. § 706(2)(A), and, therefore, it addresses the merits of only that claim.

Dizani challenges the Policy Memoranda as arbitrary and capricious and as violative of 5 U.S.C. § 553's required notice-and-comment rulemaking procedures.[29] The APA authorizes a court to "hold unlawful and set aside" a final agency action found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *see id.* § 704 (to be reviewable under the APA, the challenged action must constitute a "final agency action"). For an agency action to be "final," the action "must mark the consummation of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature." *U.S. Army Corps of Eng'rs v. Hawkes Co.*, 578 U.S. 590, 597 (2016) (citing *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997)). Furthermore, the action "must be one by which rights or obligations have been determined, or from which legal consequences will flow." *Id.* (citing *Bennett*, 520 U.S. at 177-78). Generally, a court should take a "pragmatic" approach to determining whether an agency action is final. *See San Francisco Housing Ass'n v. Dep't of the Interior*, 946 F.3d 564, 578 (9th Cir. 2019) (quoting *U.S. Army Corps of Eng'rs v. Hawkes Co.*, 578 U.S. 590, 599 (2016)).

Accordingly, the first issue is whether PM-0192 and PM-094 are final agency actions for the purpose of 5 U.S.C. § 706(2). Edlow contends that because PM-0192 and PM-0194 do not have direct and appreciable legal consequences to Plaintiffs, including Dizani, they are not final agency actions.[30] The Court disagrees. The Policy Memoranda state that the adjudicative holds "will remain in effect until lifted [or modified] by the USCIS Director through a

---

[29] *Id.* at ¶¶ 152-169.

[30] Opposition 21:26-22:4.

subsequent memorandum or memorandum attachment."[31] That language indicates that USCIS has implemented an adjudicative hold, and it provides no suggestion that a timeline exists for rescinding or modifying the hold. Each Policy Memoranda includes language purportedly clarifying that it creates no "right or benefit, substantive or procedural,"[32] but form language does not change the practical effect of the Policy Memoranda. Nor does the language directly address the issue of whether the Policy Memoranda determine rights or obligations from which legal consequences will flow.

The next issue is whether the Policy Memoranda are arbitrary and capricious or without observance of procedure required by law. *See* 5 U.S.C. §§ 706(2)(A) & (D). Edlow does not substantively oppose Dizani's arguments that the Policy Memoranda are arbitrary and capricious and in violation of APA procedural requirements. The Court finds persuasive the reasoning of district courts in similar cases and concludes that the Policy Memoranda are indeed arbitrary and capricious. *See Varniab*, 2026 WL 485490, at *18-*20; *Saghafi v. Edlow*, 2026 WL 1127468, at *8-*10 (D. Md. Apr. 24, 2026).

The APA authorizes a court to hold unlawful and to set aside an agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). "The touchstone of arbitrary and capricious review under the APA is reasoned decisionmaking." *All. for the Wild Rockies v. Petrick*, 68 F.4th 475, 493 (9th Cir. 2023) (citation modified). "That means an agency's action can only survive arbitrary or capricious review where it has articulate[d] a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Id.* (citation modified). "[I]f the agency has relied on factors which Congress has not

---

[31] PM-0192 2-3; PM-0194 3.

[32] PM-0192 4; PM-0194 5.

intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise," then the agency's decision making is arbitrary and capricious. *Id.* at 492 (quoting *Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)). The agency must consider factors including "the costs as well as the benefits" of the agency action. *State Farm*, 463 U.S. at 54.

Further, "[a]gencies are free to change their existing policies as long as they provide a reasoned explanation for the change." *Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 221 (2016). In such cases, "the agency must at least 'display awareness that it is changing position' and 'show that there are good reasons for the new policy.'" *Id.* (quoting *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009)). "In explaining its changed position, an agency must . . . be cognizant that longstanding policies may have 'engendered serious reliance interests that must be taken into account.'" *Id.* at 221–22 (quoting *Fox Television Stations*, 556 U.S. at 515). The agency also must provide "a reasoned explanation . . . for disregarding facts and circumstances that underlay or were engendered by the prior policy." *Id.* (quoting *Fox Television Stations*, 556 U.S. at 515-16).

Here, Dizani argues that Edlow did not acknowledge nor meaningfully consider "the reliance interests of I-485 applicants harmed by their actions" or "the harm done to the United States in preventing experts such as post doctorate researchers, physicians, engineers, and scientists in the United States from practicing their work."[33] The Policy Memoranda depart from the existing

33 Motion 13:23-14:2.

practice of adjudicating Form I-485 applications from applicants from countries subject to the Policy Memoranda.

While the Policy Memoranda display some awareness that they institute a change in position, the Policy Memoranda do not contain satisfactory reasoning to justify that change in position. Nor do the Policy Memoranda consider the reliance interests of Dizani in the timely adjudication of his application. PM-0192 cites two instances of violence involving Afghan nationals and states that "[r]ecently the United States has seen what a lack of screening, vetting, and prioritizing expedient adjudications can do to the American people."[34] Furthermore, PM-0192 states that USCIS has "weighed that consequence [from delayed adjudication of some pending applications] against the urgent need for the agency to ensure that applicants are vetted and screened to the maximum degree possible" and that "[u]ltimately, USCIS has determined that the burden of processing delays that will fall on some applicants is necessary and appropriate in this instance, when weighed against the agency's obligation to protect and preserve national security."[35] However, the conclusory statements that USCIS weighed the impacts of the change in policy shed no light on ***how*** USCIS weighed those considerations, or even which specific considerations USCIS weighed. Additionally, there is no indication that USCIS considered any alternatives to a blanket hold on the adjudication of applicants from the specified countries. Thus, the Court agrees with other courts to consider this issue and concludes that the Policy Memoranda are not sufficient to establish that the agency engaged in reasoned decisionmaking. *See Varniab*, 2026 WL 485490, at *19; *Saghafi*, 2026 WL 1127468, at *9-*10. Accordingly, the Court concludes that Dizani is likely to succeed on the merits of his 5 U.S.C. § 706(2)(A) claim.

---

[34] PM-0192 2.

[35] *Id.* at 3.

**D. Irreparable Harm**

Preliminary injunctive relief is available only when the moving party can "demonstrate that irreparable injury is *likely* in the absence of an injunction." *Winter*, 555 U.S. at 22 (emphasis in original). "Irreparable harm is traditionally defined as harm for which there is no adequate legal remedy, such as an award of damages." *Arizona Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1068 (9th Cir. 2014). Plaintiffs argue that they will suffer irreparable harm, absent a preliminary injunction, because the pause on their Form I-485 applications (1) prevents them from pursuing professional opportunities; (2) precludes travel and forces family separation; (3) causes financial and personal hardship; and (4) may force them to return to dangerous countries of origin.[36] However, Dizani submits no evidence specific to his situation from which the Court can conclude that he is likely to suffer irreparable harm. Accordingly, the Court **GRANTS** Dizani leave to file another motion if he believes that he can establish that he is likely to suffer irreparable harm as a result of Edlow's actions.

**E. Balance of Equities and Public Interest**

Balancing the equities requires a court to "balance the competing claims of injury and [] consider the effect on each party of the granting or withholding the requested relief." *Winter*, 555 U.S. at 24 (citation omitted). The public interest consideration "primarily addresses impact on non-parties rather than parties." *CTIA-The Wireless Ass'n v. City of Berkeley, Cal.*, 928 F.3d 832, 852 (9th Cir. 2019). When, as here, the Government is a party, the balance of the equities and public interest factors merge. *Nken*, 556 U.S. at 435.

Here, Dizani's requested remedy is narrow—he asks only that the Court lift the pause on the adjudication of his application. Edlow argues that a preliminary injunction would contravene the public interest because it would

---

[36] *See generally* Motion, Ex. A ("Plaintiffs' Declarations") [ECF No. 14-2].

"place Plaintiffs ahead of other applicants who filed earlier in time."[37] However, the Court does not understand Dizani to request that he be placed ahead of any other applicants; rather, Dizani "simply want[s his] application adjudicated."[38] Nevertheless, Dizani's request—that the Court order that his application be adjudicated within 30 days[39]—does present some concern with respect to Dizani's "place in line." In view of a preliminary injunction's purpose of preserving the status quo, *see GoTo.com*, 202 F.3d at 1210, the Court concludes that ordering the adjudication of Dizani's application within 30 days would extend beyond a mere preservation of the status quo. Accordingly, that portion of the requested preliminary injunction is **DENIED**.

Edlow does not expressly raise concerns about national security in his discussion of the public interest, but the Court notes that there is no specific information related to Dizani that suggests that he poses a threat to national security. *See Saghafi*, 2026 WL 1127468, at *15 (citing *Varniab*, 2026 WL 485490, at *24). Accordingly, the Court concludes that the balance of equities and public interest favor granting the preliminary injunction, insofar as Dizani requests that the Court enjoin Edlow from applying the adjudicatory hold to his Form I-485 application.

Although the Court concludes that Dizani is likely to succeed on the merits of his 5 U.S.C. § 706(2)(A) claim and that the balance of equities and the public interest weigh in his favor, the Court **DENIES the Motion without prejudice** because Dizani has failed to establish that irreparable harm is likely on this record.

---

[37] Opposition 24:6-8.

[38] Reply 15:9-11.

[39] Motion 33:16-19.

## IV. DISPOSITION

For the foregoing reasons, the Court hereby **ORDERS** as follows:

1. All Plaintiffs other than Mahdi Dizani are **DISMISSED without prejudice**. The dismissal of those parties from this action is without prejudice to the institution of new, separate lawsuits by the severed Plaintiffs against Edlow based upon the claims set forth in the present Complaint.

2. Dizani's Motion for a preliminary injunction [ECF No. 14] is **DENIED without prejudice**.

3. Dizani is **GRANTED** leave to file another motion that provides additional information regarding the likelihood of irreparable harm.

**IT IS SO ORDERED.**

Dated: August 17, 2026

John . o comb
UNITED STATES DISTRICT JUDGE